132 So.2d 132

**Fuller KIMBRELL**

v.

**STATE of Alabama.**

**COLUMBIA CASUALTY COMPANY**

v.

**STATE of Alabama.**

**John GRAVES**

v.

**STATE of Alabama.**

**J. W. GWIN, JR., INC.**

v.

**STATE of Alabama.**

**W. H. [Bill] DRINKARD**

v.

**STATE of Alabama.**

**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY**

v.

**STATE of Alabama.**

3 Div. 825–830.

Supreme Court of Alabama.

June 29, 1961.

Hill, Hill, Whiting, Harris & Pilcher, Montgomery, for appellants Drinkard, Kimbrell and Gwin.

Hill, Hill, Stovall & Carter, Montgomery, for appellants Graves and Columbia Cas. Co.

Steiner, Crum & Baker, Montgomery, for appellant American Guarantee & Liability Ins. Co.

John Patterson, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for appellee.

COLEMAN, Justice.

This is a consideration of six appeals from separate decrees overruling demurrers to a bill in equity, brought by the Attorney General in the name of the State of Alabama, to recover state funds alleged to have been paid out illegally.

Respondents are the individuals who at the time of the alleged payments held, respectively, the offices of Director of the Department of Conservation, Director of the Department of Finance, the Comptroller, and their sureties, and J. W. Gwin, Jr., Inc., a corporation, hereinafter referred to as Gwin. The respondents are not sued in their capacity as officials of the State of Alabama but as individuals. The gist of the suit is the claim that the three state officials, acting in their official capacities, and in concert with Gwin, caused payments of state money to be made to Gwin, that such payments were illegally made, and

that respondents ought to be required to repay the money to the state.

The bill of complaint avers that the Conservation Director made a contract with Gwin for construction of a motel and certain other improvements at Lee-Hi State Park in Limestone County; that the estimated cost was approximately $100,000; that Gwin was to do the work on a cost plus 10% basis; that said contract was made without advertising for sealed bids, without competitive bidding, without the contractor making a performance bond, without the approval of the Governor in writing, and without the approval of the State Building Commission, all in violation of Title 50, Code 1940, as amended by Act No. 492, 1947 Acts, and Act No. 521, 1953 Acts; that from January to May, 1956, Gwin performed the work as authorized by the Conservation Director, except that the concession building was left unfinished; that on February 14, 1956, Gwin filed an invoice claiming $7,784.83 for labor and materials furnished under said contract; that on March 2, 1956, the Department of Conservation executed a material receipt for the labor and materials set forth in said invoice; that on March 1, 1956, a document purporting to be a Purchase Requisition was executed by the Conservation Director, requesting the Finance Director to requisition the labor and materials set forth in said invoice; that on March 22, 1956, the Finance Director executed a purchase order to Gwin, purporting to purchase the labor and materials set forth in said invoice; that on March 23, 1956, the Comptroller issued a warrant on the state treasury for $7,784.83, payable to Gwin, for labor and materials set forth in said invoice, and that Gwin has been wrongfully and unlawfully paid the aforesaid sum under said warrant by the State of Alabama.

The bill further avers that on three specified dates in March, April, and May, 1956, Gwin filed three separate invoices for $17,007.56, $30,960.99, and $45,522.13, respectively, totaling $93,490.68, for labor and materials furnished under said contract; that said invoices were presented by the Conservation Director to the Finance Director and Comptroller for payment, and the Finance Director and Comptroller refused to pay the same "because of their illegality."

The bill further avers that on July 20, 1956, Gwin filed seven separate invoices, for amounts ranging, respectively, from $11,053.43 to $14,711.33, totaling $93,490.68, for labor and materials furnished under said contract; that on to wit, July 19, 1956, seven purchase requisitions were executed by the Conservation Director requesting the Finance Department to requisition the labor and materials set forth in the seven invoices; that on July 20, 1956, the Finance Director executed seven purchase orders, corresponding to the invoices, purporting to purchase the labor and materials set forth in the invoices; that on July 20, 1956, the Conservation Director executed seven material receipts corresponding to the invoices acknowledging receipt of the labor and materials set forth therein; that on July 20, 1956, the Comptroller issued a warrant on the state treasury for $93,490.68 payable to Gwin, and that Gwin has been unlawfully paid state funds in the amount of the warrant.

The payment of said funds and the acts of the respondents are characterized in the bill as being wrongful and unlawful. The bill avers that the contract was made by the Conservation Director without legal authority because the contract was entered into in violation of Title 50, Code 1940, as amended by Act No. 492, 1947 Acts, and Act No. 521, 1953 Acts, without advertising, without competitive bidding, without a performance bond by the contractor, without approval by the Governor in writing, and without approval by the State Building Commission.

The bill avers that the contract was void and contrary to public policy for failure to comply with the statute; that the Conser-

vation Director "did wrongfully and unlawfully attempt to conceal the illegality of said contract in that" he "attempted to obtain approval of said contract by the State Building Commission subsequent to the execution of said contract and after work had been performed under said contract," and that the three officials and Gwin "wrongfully and unlawfully conspired to obtain payments from the State of Alabama for materials furnished and labor performed under said illegal contract by causing said invoices dated March 16, 1956, April 20, 1956, and May 18, 1956, same being Exhibits 13, 14 and 15, to be altered and changed so as to make seven (7) new invoices bearing dates of March 13, 1956, March 16, 1956, April 2, 1956, April 17, 1956, May 1, 1956, May 14, 1956, and May 18, 1956, same being Exhibits 16, 17, 18, 19, 20, 21 and 22; that the labor performed and the materials furnished as shown in invoices which are Exhibits 13, 14 and 15, is the same labor performed and materials furnished as is shown in the invoices which are Exhibits 16, 17, 18, 19, 20, 21 and 22; that said alteration of said invoices was an attempt by said Respondents to evade the requirements of Act No. 521, General Acts of Alabama 1953, requiring approval of the State Building Commission for all contracts for the construction of public improvements in excess of $15,000.00."

The bill further avers: "18. That said contract is illegal and void and that the illegal payment of public monies made for the public improvements pursuant to said contract are far in excess of the present value of said improvements and said payments were in excess of the amounts which would have been expended had the procedures required by law been followed and said contract awarded to the lowest responsible bidder. * * *"

Fifty-seven exhibits are attached to the bill. The exhibits are copies of invoices, requisitions, letters, and other documents.

The respondents filed separate demurrers, all of which were separately overruled. Respondents have appealed separately and have severally assigned as error the action of the court in overruling their respective demurrers. However, as we understand the argument presented by respondents, they urge two propositions: first, that the bill was without equity because the averments fail to show that the alleged contract was invalid; and second, that even if the contract was invalid, complainant was bound to offer to do equity and the bill is without equity because it contains no such offer.

As to the first proposition, respondents say that although the bill avers a failure of the respondents to comply with Act No. 521, 1953 Acts, page 685, that act does not govern the making of the alleged contract with Gwin. Respondents say that § 176, Title 8, Code 1940, authorizes the Conservation Director, acting through "the division of state parks," to make contracts for the construction of buildings in parks and does not require such contracts to be let in compliance with Act No. 521, supra, or Act No. 492, 1947 Acts, page 338.

We think it is clear that the bill shows that the contract was not let in compliance with Act No. 521, and we do not understand that respondents insist to the contrary. So then, if Act No. 521 governs the instant contract, the bill sufficiently shows that the contract was not made in compliance with the applicable statutes. On the other hand, if Act No. 521 does not govern the instant contract, and § 176, Title 8, does govern, then the bill does not show that the instant contract was not made in compliance with the statute. Thus the question for decision is whether or not Act No. 521 applies.

Section 176, Title 8, is a codification of Section 3 of Act No. 556, 1939 Acts, page 878, which is entitled An Act, inter alia, "To prescribe additional powers * * * of * * * the Director of Conservation with reference to the operation * * * of State Parks and the acquisition of lands for such Parks; to authorize the execution of contracts arising out of the use and ownership of such lands and the waters thereof; * * *."

Section 176 recites in pertinent part: "The director of conservation, acting through the division of state parks * * * shall have the following powers * * *: To acquire in the name of the State of Alabama * * * land deemed necessary * * * to be * * * maintained as a part of the state park system; * * *. To construct and operate suitable public service privileges and conveniences on any land embraced within the state park system * * *."

While § 176 does not expressly authorize the construction of buildings, it does authorize the construction of "privileges and conveniences," which might be construed to embrace a motel, as in the instant contract. This implication is suggested by the further grant of power "to charge and collect reasonable fees for the use of the same," i. e., "privileges and conveniences." Section 176 grants power to contract for the purpose of developing, operating, or maintaining any public park, although it does not expressly grant power to contract for the construction of buildings. Complainant does not controvert the proposition that § 176, standing alone, would authorize the making of the instant contract by the Conservation Director, or the proposition that such contract, if made solely under the authority of § 176, could have been made without competitive bidding and without the approval of the Governor, or the building commission. Complainant insists, however, that the power to contract for the construction of buildings granted to the Conservation Director by § 176 has been circumscribed by Acts No. 521 and No. 492, supra.

Act No. 492, approved September 30, 1947, rewrote Chapter 1, Title 50, Code 1940, and in pertinent part recites:

"Section 1. Advertisements for bids and awards.—Before entering into any contract for a public improvement, the awarding authority shall advertise for sealed bids once each week for three consecutive weeks in a newspaper of general circulation in the county or counties in which the improvement or undertaking, or some part thereof, is to be made; the awarding authority may also advertise in such other publications as it may deem advisable. Such notices shall state that plans and specifications for the improvement are on file in the office of the authority, and the time and place in which bids will be received and opened. All bids shall be opened publicly at the advertised time and place.

* * * * * *

"Section 13. * * * The term 'awarding authority' shall include the state highway department, the state building commission, and the state docks commission, the state board of education and all the state agencies of the state of Alabama, but shall not include any county board of education or other county or municipal officers or board. * * *."

The definition of "awarding authority" in Act No. 492 does not expressly include the Conservation Department. Act No. 521, approved September 3, 1953, Pocket Parts, Code 1940, Title 8, §§ 14(3)–14(7), does make the Director of the Department of Conservation an awarding authority. In pertinent part Act No. 521 recites:

"Section 1. The Director of the Department of Conservation is hereby designated as an awarding authority.

* * * * * *

"Section 4. The Department of Conservation is further empowered and authorized to enter into contracts for the construction or modification of any buildings or facilities within the jurisdiction of said Department, provided, however, all such contracts shall be invalid and void unless approved, in writing, by the Governor. And further provided that all such construction contracts shall be let and made in accordance wtih the provisions of Chapters 1 and 2 of Title 50 of the 1940 Code of Alabama, as amended.

"Section 5. All construction or modification contracts as specified herein which may hereafter be made are excepted from approval by the State Building Commission with the exception of buildings erected by the Department that exceed in cost the sum of fifteen thousand dollars. Provided, however, all such construction or modifications must comply with the State Building Code.

"Section 6. All laws or parts of laws in conflict herewith are hereby expressly repealed."

Respondents contend that under the rule that repeal by implication is not favored, Act No. 521 cannot be construed as depriving the Conservation Director of the power to make construction contracts under § 176, Title 8, without competitive bidding or the approval of the Governor or building commission. In one of the briefs for appellants, the argument is stated as follows:

"We submit that the 1939 statute was designed to accomplish a specific and limited purpose—that is, the development and utilization of the public parks of this State—and we urge that it should be so construed as to enable State officials to carry out the purposes for which it was passed. The 1953 Act, however, confers a general contractual power upon the Director of Conservation with respect to *all contracts* for the construction or modification of any buildings or facilities within the jurisdiction of the Conservation Department. We urge and insist that the 1939 Act and the 1953 Act are mutually exclusive, that there is a reasonable field of operation for both acts, and that the limitations placed upon the exercise of the contractual authority conferred by the 1953 Act apply only to contracts made under the authority of that act and do not apply to contracts made pursuant to the 1939 statute."

We do not agree with this argument. Repeal by implication is not favored, and the particular will govern the general, but there is also the rule of construction that the intention of the Legislature must primarily be determined from the language of the statute itself if it is unambiguous, and where the language of the statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction. Dixie Coaches v. Ramsden, 238 Ala. 285, 190 So. 92.

"* * *. 'When the language as used by the lawmakers is plain, it is the duty of the courts to obey; no discretion is left; and courts should not stray into by-paths or search for reasons outside of the plain letter of the law upon which to rely for the purpose of giving a different meaning or interpretation, for "when the language is plain it should be considered to mean exactly what it says." Little v. Foster, 130 Ala. [154] 163 [30 South. 477]. * * *.' " Ex parte Bozeman, 183 Ala. 91, 99, 63 So. 201, 203.

See also: State v. Robinson Land & Lumber Co. of Alabama, 262 Ala. 146, 77 So.2d 641; cases cited in Ala. Digest, Statutes, ⊚190.

With respect to contracts governed by Act No. 521, the language of the act is plain and unambiguous. The Department of Conservation is authorized " * * * to enter into contracts for the construction or modification of any buildings or facilities within the jurisdiction of said Department," and "all" such contracts shall be void unless approved by the Governor in writing; and "*all* such construction" contracts shall be made in accordance with Title 50 as amended. We are unable to conclude that contracts for the construction of buildings and facilities in state parks are excepted from Act No. 521. That act says any buildings within the jurisdiction. The jurisdiction includes parks.

We do not think the averments of the instant bill can be construed as showing that

the instant contract was not one for construction of a building or facility within the jurisdiction of the Conservation Department, or did not exceed in cost the sum of $15,000. Accordingly, we are of opinion that the averments of the bill do show that the contract here alleged was not entered into as required by statute and the grounds of demurrer taking the point that the bill was insufficient in this respect are not well taken.

■ The second proposition argued by appellants is that the bill is demurrable for failure to offer to do equity. The argument in support of this proposition is stated in the following excerpts from one of the briefs:

"* * * even if it be assumed—for sake of argument—that the contract was invalid by reason of a non-compliance with some statutory procedural or contractual requirement, nevertheless we contend that the State of Alabama owed the appellant, J. W. Gwin, Jr., Inc., for the reasonable value of the work performed by it under such contract under equitable principles prohibiting unjust enrichment, so that the payments in issue were, therefore, properly and lawfully made.

\* \* \* \* \* \*

"It affirmatively appears from the Bill of Complaint that the reasonable value of the facilities constructed was a *minimum of $85,000.00—even under the appellee's contentions*—while appellants contend that the reasonable value of such facilities was actually *in excess of* the $101,275.51 * * * *In either event, however, the State of Alabama was legally and morally indebted to the appellant, J. W. Gwin, Jr., Inc., in an amount equal to the reasonable value of the facilities constructed,* so that payments were properly made in that amount even though it be assumed—for sake of argument—that the contract was invalid by reason of a noncompliance with some statutory procedural or contractual requirement. It

therefore must follow that *the Attorney General cannot—under any circumstances—justify filing this suit to recover the entire amount of $101,275.51, where his own pleadings reflect that the reasonable value of the facilities constructed was a minimum of $85,000.-00.*

*"A complainant seeking equitable relief must come into court with clean hands, and must offer to do equity.* In the instant case the appellee has prosecuted an unjust and inequitable claim against the appellants, inasmuch as the appellee's own pleadings reflect that payments were properly made in the sum of at least $85,000.00. We submit that the appellee—by seeking to recover such sum of $85,000.00 which, even under its own pleadings, was properly paid—has not come into this court with clean hands, has not offered to do equity, and is therefore entitled to no relief in this Court of Conscience."

The principle relied on by respondents has been expressed as follows:

"* * * It is ordinarily true that a suit in equity seeking rescission of a contract should contain an offer to do equity, so that upon rescission of the contract the respondent may be put in his former condition. Allgood v. Bank of Piedmont, 115 Ala. 418, 22 So. 35. In other words, the omission of an offer to do equity where it appears upon the face of the bill that such offer is necessary, destroys the equity of the bill. * * *." Penny v. Odom, 260 Ala. 563, 565, 71 So.2d 881, 882.

The cases cited by respondents in support of the application of this principle to this case are cases wherein complainant sought cancellation of mortgages and deeds allegedly void and for an accounting. In those cases, it was held that restoration of the thing received by complainant was a condition precedent to his right to the relief sought, and consequently he must aver an

offer to make restoration. As stated in Penny v. Odom, supra, the omission to make an offer to do equity "where it appears upon the face of the bill that such offer is necessary, destroys the equity of the bill." The relief here sought by complainant is the recovery of money alleged to have been paid on a void contract. Can it be fairly said that it appears on the face of the instant bill that complainant's right to relief is subject to the doing of any act on complainant's part, or that any act on complainant's part is a condition precedent to its right to relief? We think not.

The law in this state with respect to recovery back, by a municipal corporation or political subdivision, of money paid for labor and materials received by the subdivision, as the result of the execution of a contract not made as required by law, was recently considered and decided in State for use of Russell County v. Fourth National Bank of Columbus, Georgia, 270 Ala. 135, 117 So.2d 145, where many authorities of this and other jurisdictions are cited. This court held that where a county governing body entered into contracts for road construction without compliance with § 54, Title 23, Code 1940, as to public bids, and the bill did not charge any of the respondents with fraud, collusion, peculation, or improvidence, and from aught that appeared from the bill, the roads were properly constructed and the contractors had received no more than the reasonable value of the services, materials, and labor furnished, then the county could not recover back the money paid to the contractor. See 43 Am. Jur. 823, Public Works and Contracts, § 79.

It appears that the state, as well as its subdivisions, is to have its rights determined by the same rules which apply to private persons. This court has quoted with approval the following statement:

" ' "The underlying principle of all the decisions is that, when the sovereign comes into court to assert a pecuniary demand against the citizen, the court has authority, and is under the duty, to withhold relief to the sovereign, except upon terms which do justice to the citizen or subject, as determined by the jurisprudence of the forum in like subject-matter between man and man." ' United States v. Walker, [5 Cir.,] 148 F. 1022, 79 C.C.A. 392.

" ' "The state, in all its contracts and dealings with individuals, must be adjudged and abide by the rules which govern in determining the rights of private citizens contracting and dealing with each other." ' People v. Stephens, 71 N.Y. 527, 549." Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 367, 168 So. 159, 165;

and in the same case, wherein a taxpayer sought to recover an electric light plant on the ground that an earlier transfer of a distribution system was void for lack of approval by the voters of the municipality as required by statute, this court said:

"The doctrine of ultra vires as applied to governing bodies is a shield for the protection of the public, not a weapon to inflict a wrong upon the individual for the benefit of the public.

"In effectuating this elemental principle denying relief in equity which is not equitable, our court, in common with prevailing authorities generally, applies the doctrine of estoppel in pais even against the state or its governing subdivision. (Citations Omitted.)" 232 Ala. 361, 367, 168 So. 159, 165.

In the Fourth National Bank case, supra, the opinion states "The bill does not allege that the county has lost one cent as a result of the construction of the roads under negotiated contracts." [270 Ala. 135, 117 So.2d 153.] In the instant bill it is alleged that the monies paid "are far in excess of the present value of said improvements." As respondents point out, in Exhibit 55, it is stated that $85,000 is the reasonable value of the work. It cannot fairly be said that the instant bill does not aver that the state has lost money on the instant trans-

action. Consequently, we are of opinion that under the averments of the bill which must be considered as true on demurrer, the result reached in State v. Fourth National Bank, supra, cannot be reached here.

■ The general rule is that he who seeks equity must do equity, and that his bill must so offer, but when the bill shows that complainant is not required to do anything in good conscience as a condition to the granting of relief, the averment of an offer to do equity is not necessary. Head v. Carroll, 230 Ala. 688, 163 So. 328; Sykes v. Sykes, 262 Ala. 277, 78 So.2d 273. Complainant here seeks recovery of money alleged to have been paid to Gwin, without authority of law, and alleges payment of $101,275.51 for services and materials allegedly worth only $85,000.

With respect to the right of a city to recover from the contractor on a counterclaim for progress payments allegedly made in excess of the reasonable value of the work done, where the counterclaim made no charge of bad faith, the court stated "* * * it is our view that Gamewell (the contractor) is entitled to retain no more than the reasonable value of the benefits received by the city. * * *." Gamewell Company v. City of Phoenix, 9 Cir., 219 F.2d 180, 182. Construing the averments of the instant bill against the pleader, we are nevertheless of opinion that it shows that Gwin is not entitled to retain more than the reasonable value of the benefits received by the state. We are unable to see that any action on the part of the state is a condition precedent to the right to recover the excess which was allegedly paid without consideration therefor. On that view, an offer to do equity is not necessary.

■ Complainant prays for recovery of $101,275.51, but also prays in the alternative for other, further, and different relief as may be proper. A bill stating equities which entitle the complainant to relief and praying for proper relief, is not demurrable for the reason that a prayer for further, but unwarranted, relief is con-

joined. Fonde v. Lins, 259 Ala. 553, 67 So.2d 834. A bill is not demurrable because it prays too much. Booth v. Bates, 215 Ala. 632, 112 So. 209.

Accordingly, we are of the view that the bill does not disclose anything which complainant should offer to do as a condition precedent to the relief it seeks, and that the ground of demurrer taking the point that complainant did not offer to do equity is not well taken.

We have dealt with the right of complainant to recover against the contractor, Gwin, who received the money allegedly paid without authority of law. Other respondents are alleged to have conspired with Gwin to evade the statute. If, as alleged, such other respondents, by misfeasance or malfeasance in performance of official duty caused complainant to sustain the alleged loss, then it appears to us that each of the other respondents is liable to the extent that the loss may have resulted from his breach of duty. The sureties would be liable according to the terms of their respective undertakings.

■ Appellants argue that complainant cannot recover in this case because of the rule that where an illegal contract has been fully executed, equity will not lend its aid to either party, citing Black & Manning v. Oliver, 1 Ala. 449; Clark v. Colbert, 67 Ala. 92, and similar cases. We think the answer to this argument is that the state, who now seeks relief, was not bound by the alleged contract with Gwin. That contract, under the averments of the bill, was void for failure to comply with the statute, and the complainant never became a party bound by the alleged contract. This distinction between parties is pointed out in Ellis v. Batson, 177 Ala. 313, 58 So. 193, 194, where a county treasurer was denied relief against his agent, Batson, for county funds embezzled by the agent. Relief was denied because the contract between treasurer and agent, on which contract the treasurer relied, was illegal; but the court said:

" * * *. Of course, the county could, no doubt, recover the funds belonging to it from Batson * * *." In the instant case, we do not think the rule insisted on by appellant has application.

Since the grounds of demurrer argued by appellants are not well taken, the decrees overruling the demurrers are due to be and are affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and GOODWYN, JJ., concur.