431 So.2d 1237 (1983)
STATE of Alabama, ex rel. Charles A. GRADDICK, Attorney General of the State of Alabama, et al.
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY, INC., Chris C. Rush, and Franklin Group Architects, P.A., etc., et al.
81-205.
Supreme Court of Alabama.
May 20, 1983.
*1238 J. Knox Argo of Argo & Enslen, Montgomery, for appellants.
John Patterson of Patterson & Rinehart, Montgomery, and W. Terry Bullard of Moody, Burford, Phillips & Bullard, Birmingham, for appellee St. Paul Fire & Marine Ins. Co., Inc.
James W. Garrett, Jr. of Rushton, Stakely, Johnston & Garrett, Montgomery, for appellee Franklin Group Architects.
EMBRY, Justice.
This is an appeal by the State of Alabama from a judgment which denied the State's claims on its complaints against St. Paul Fire and Marine Insurance Company, a corporation (St. Paul); Chris C. Rush d/b/a Rush Building Company (Rush); and James R. Franklin, James R. Franklin Architects/Planners P.A., Franklin Group Architects, P.A. (Franklin) and granted relief for Rush on his third party complaint and directed that a writ of mandamus issue to the Director of the State Department of Conservation and Natural Resources ordering him to take the necessary action to pay Rush $28,028.22 for extra work performed by Rush under contract No. 28-P-20. We affirm.
Plaintiff, State of Alabama, brought suit against St. Paul, Rush, and Franklin for breach of contract and fraud against Rush; breach of contract, fraud and deceit, and negligence against Franklin. In addition it was alleged that Franklin and Rush acted in collusion to plaintiff's detriment. Suit was brought against St. Paul on a performance bond issued by St. Paul as surety for Chris Rush naming the State of Alabama Department of Conservation as obligee. Rush by third party complaint against John M. McMillan, Jr., as Director of the Department of Conservation and Natural Resources of the State of Alabama sought a writ of mandamus ordering payment of $28,028.22 for extra work performed by Rush for plaintiff under contract. Defendant Franklin denied any breach of contract, fraud or negligence and pleaded that the actions were barred by the statute of limitations, laches, estoppel, failure to give proper notice; that plaintiff negligently contributed to its own damages, failed to *1239 mitigate its damages, and that plaintiff's damages were caused by its failure to let contracts for roads and utilities simultaneously with the buildings contract. Defendants, Rush and St. Paul, denied any breach of contract or bond or fraud and pleaded that the actions were barred by the statute of limitations, laches, estoppel, failure to give proper notice; that plaintiff failed to mitigate its damages, that its damages were caused by its failure to let contracts for roads or utilities simultaneously with the buildings contract or failing to let them in the proper order, that the suit was not timely brought, and acceptance and waiver. Defendant St. Paul, further defended on the grounds that the final payment, including retainage, to Rush, without notice to it, discharged it as surety. Plaintiff denied the allegations in Rush's third party complaint.
Plaintiff brought a second suit (utilities contract suit) against St. Paul on a performance bond as surety for Rush naming the State of Alabama Department of Conservation as obligee and against Rush on contract No. 28-P-19. Defendants, Rush and St. Paul, denied any breach of contract or bond, and pleaded that the actions were barred by the running of the statute of limitations, laches, estoppel, failure to give proper and timely notice of defects; that the suit was not timely brought, acceptance and waiver. Defendant St. Paul further defended on the grounds that the final payment, including retainage, to Rush, without notice to it, discharged it as surety. Franklin had originally been a defendant in this latter suit and had filed a third party complaint against Ladd Environmental Engineers, Inc., Ladd Environmental Consultants, Inc., Ladd Engineering Associates, Inc., E.J. Ladd, F.H. Landstreet and C.M. Landstreet; however, prior to trial, on motion of plaintiff and order of the trial court and on motion of Franklin and order of the trial court, the complaint against Franklin and the third party complaint against Ladd were dismissed.
A trial on the merits was held from 25 May to 29 May 1981. The cases, as tried, consisted of:
(1) Suit by the State of Alabama against Rush and St. Paul based upon the State's contentions that there were deficiencies in the work performed by Rush on contract No. 28-P-19, the utilities contract.
(2) Suit by the State of Alabama against Rush, St. Paul and Franklin based upon the State's contention that there were deficiencies in the work performed by Rush and Franklin under contract No. 28-P-20, building contract.
(3) Third party complaint of defendant Rush claiming monies owed by the State of Alabama to Rush for extra work performed by Rush during Rush's performance of contract No. 28-P-20, building contract.
The cases were consolidated for trial by agreement, and tried and submitted for determination by the trial court on the pleadings, testimony ore tenus, briefs and exhibits introduced at trial. After a thorough review of the record and briefs in this case, this court is well-satisfied with the trial court's findings of fact and conclusions of law as set forth in its order of 3 September 1981. The pertinent part of that order is as follows:
"The Court has considered the evidence, arguments of counsel and the brief filed on August 20, 1981 containing the contentions of Rush and Franklin. The Court is of the opinion that the Plaintiff has failed to meet its burden of proof that Rush breached either of the contracts or warranties or any other duty owed the Plaintiff arising out of the construction projects; that Plaintiff also failed to meet its burden of proof that Franklin breached his contract with the State; that Plaintiff also failed to meet its burden of proof that Franklin or Rush were guilty of fraud, collusion or negligence as alleged in the pleadings; and that Rush has met his burden showing a clear right to a writ of mandamus to effect payment for the extra work and expense which he claims. It is the further opinion of the Court that judgment should be rendered in favor of Rush and Franklin and against Plaintiff on both of *1240 Plaintiff's complaints as amended and all counts therein; that Rush is entitled to $28,028.22 for extra work and expenses, and judgment should be rendered in his favor on his third party complaint, and writ of mandamus prayed for, issued; and that judgment should be rendered in favor of St. Paul and against Plaintiff on both of Plaintiff's complaints and all counts therein, as St. Paul is surety for Rush and has all the defenses available to Rush. The evidence shows that St. Paul was not given notice prior to the payment of the retainage. St. Paul contends that in the absence of fraud, this discharged them as surety. The Court agrees...."
A strong presumption as to the correctness of the trial court's findings of fact exists on appeal, and these findings will be set aside only if unsupported by credible evidence or if found to be plainly and palpably wrong. Shepherd Realty v. Winn-Dixie Montgomery, 418 So.2d 871 (Ala.1982); Reliance Ins. Co. v. Substation Products Corp., 404 So.2d 598 (Ala.1981). The trial court's conclusions are amply supported by the evidence of record and we cannot find that its decision was palpably wrong. Therefore, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
FAULKNER, JONES, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX and ALMON, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I dissent from the majority's holding that mandamus was proper to force the State to pay Rush Building Company $28,028.22 for the access roads it cut through to the building sites.
There are two contract provisions which specify how this transaction should have been handled. Articles 4.04(a) and (b) provide:
"Extra Work. (a) General. In connection with the work covered by the contract, the Contractor, when so directed by the Engineer in writing, shall perform extra work for which there is no quantity or unit price in the contract and which work is not included in the contract unit prices bid for other pay items under the terms of the contract. Such extra work shall be done in accordance with the specifications and as directed by the Engineer. Work described in Article 4.03 will not be classed as extra work.
(b) Supplemental Agreement or Force Account Order Required. Before any such extra work is started, a supplemental agreement shall be executed, describing the kind, location, and estimated quantities of the extra work to be done and specifying the unit prices or lump sum agreed upon, or a written order shall be issued for the work, stating that compensation will be on a force account basis; however, in an emergency, the Engineer may direct the immediate start of the extra work by letter containing this information, such letter to be superseded later by a supplemental agreement or force account order."
The trial court found:
"It is clear that an emergency situation existed and the prosecution of the work under the contract could not proceed until the extra work was done."
Under the language of the contract, the State could be bound to pay for the proposed work only by the execution of a supplemental agreement or by letter from the engineer directing the work, followed by a supplemental agreement or force account work order. Neither of these procedures was followed. In fact, the project engineer, on February 5, 1971, by letter to J.R. Franklin, the architect, specifically stated, "We cannot authorize Rush to cut any trees or do any other type of clearing in the area without approval from the Department of Conservation."
The contract also provided in Article 4.04(b):
"Claims for extra work not covered by a supplemental agreement or a force account order will be rejected except when presented as required in Article 9.08."
*1241 Article 9.08 provides a procedure for securing extra compensation where the contractor is required to do work not covered in the contract and not approved by the engineer:
"Disputed Claims for Extra Compensation. (a) Prior Notice of Intent Required. In any case where the Contractor deems that extra compensation is due him for work or materials not clearly covered in his contract and not ordered by the Engineer as extra work as defined herein, the Contractor shall notify the Engineer in writing, with copy to the Director, of his intention to make claim for such extra compensation before he begins the work on which he bases his claim. If such notification is not given, and the Engineer is not afforded facilities for keeping strict account of actual cost as defined for force account construction, the Contractor thereby agrees to waive the claim for extra compensation for such work. Such notice by the Contractor, and the fact that the Engineer has kept account of the cost as aforesaid, shall not be construed as proving the validity of the claim. The validity of the claim must be passed upon by the Engineer. In case the claim is found to be just, it shall be allowed and paid. Nothing in this article shall be construed as establishing any claim contrary to the terms of Articles 4.03 and 4.04."
Article 9.08(b) of the contract provides that the contractor may also pursue his claim with an advisory board:
"(b) Advisory Board. Upon request of the Contractor, the Director may, at his discretion, refer any question at issue involving the amount or rate of settlement or the liability of the State for any amount other than as shown by the Engineer's estimates, to an advisory board for its findings and recommendations.
"The advisory board shall consist of three persons, one chosen by the Director, one by the Contractor, and the third by the Director and the Contractor. The member chosen by the Director, and the third member chosen by the Director and the Contractor, shall be registered professional engineers licensed to practice by the Alabama Board of Registration. The cost of compensation and expenses of the advisory board shall be shared equally by the State and the Contractor.
"The advisory board shall not be authorized to report its interpretation of the plans and specifications or the qualities of the materials or workmanship furnished by the Contractor, but only to report to the Director its findings on questions involving compensation to the contractor for work actually performed and extension of time for delays in completion actually incurred, that have not been allowed by the Engineer, and to advise the Director in accordance with the recommendations of the advisory board."
The trial court was of the opinion that "[t]here were sufficient letters and memoranda concerning the extra work to satisfy the requirements that authorization be in writing," as provided in Article 4.04. I disagree.
The letter of February 5, 1971, written before the roads were cleared, states that Rush was not authorized to cut the roads. On September 7, 1972, John Cain, Chief Engineer for the Department of Conservation, stated that the State was unable to pay for the road work under a change order and suggested that Rush file a claim with the State Board of Adjustments. I find virtually no support for the trial court's statement that these were "sufficient letters and memoranda" to constitute an authorization.
The trial court went on to state, "[E]ven in the absence of written authorization, the state waived such a requirement in this case by its subsequent course of conduct." Again, I disagree. If no order had been secured from the engineer for the work as provided in Article 4.04, then the contractor was required to follow the procedures set forth in Article 9.08. If the contractor fails to secure the engineer's authorization, then Article 9.08 provides: "the Contractor thereby agrees to waive the claim for extra compensation for such work." See, Rainer v. Tillett Brothers Construction Co., 381 So.2d 36 (Ala.1980).
I am further persuaded to this result because of my belief that Code 1975, *1242 § 9-2-43, requires that any agreement between the Department of Conservation and Natural Resources and a contractor which is arrived at in a manner other than that described in Articles 4.04 and 9.08 would be void unless approved in writing by the governor. Kimbrell v. State, 272 Ala. 419, 132 So.2d 132 (1961). In effect, this would constitute a new contract between the parties rather than the anticipated supplemental agreement or force account order described in the original contract. Thus, I am of the opinion that any alleged agreement between the parties for extra work arrived at in a manner other than that set out in the original contract would have been void.
For these reasons, I would hold that mandamus was improper in this case and that that portion of the trial court's order granting mandamus is due to be reversed.
MADDOX and ALMON, JJ., concur.