WOODALL, Justice.
In separately filed declaratory-judgment actions, Gulf Beach Hotel, Inc., and Charley Grimsley (hereinafter referred to collectively as “the hotel”) attacked the legality of an agreement, a memorandum of understanding, between the Alabama Department of Conservation and Natural Resources (“the Department”) and Auburn University (“the University”) for the long-term lease of a portion of Gulf State Park (“the park”), more specifically, the site of the former Gulf State Park Lodge (“the lodge”), which was destroyed by Hurricane Ivan in 2004. The trial court consolidated *435 the declaratory-judgment actions. The defendants named in those consolidated actions were Governor Bob Riley; M. Barnett Lawley, commissioner of the Department; Finance Director James Allen Main; the University; Gulf State Park Authority (“the Authority”); the Department; Dr. Jay Gogue (successor to Edward R. Richardson), president of the University; West Paces Hotel Group, LLC; and Marcus Easterwood, Richard Liles, and Terry Boyd, officials of the Department. Gulf Beach Hotel, Inc., operates the Perdido Beach Resort, a hotel and conference center located near the park. Grimsley is a citizen and taxpayer of the State of Alabama.
The Alabama Education Association (“the AEA”) and the Alabama State Employees Association were allowed to intervene as plaintiffs. Ultimately, the trial court entered a summary judgment in favor of the hotel and the intervenors, holding that the arrangement proposed by the memorandum of understanding and between the Department and the University violates various statutory and constitutional provisions. The defendants filed a notice of appeal in each declaratory-judgment action, and the appeals have been consolidated. We dismiss the Department, the University, and the Authority as defendants, and we vacate the trial court’s judgment insofar as those defendants are concerned; otherwise, we affirm in part and reverse in part.

I. Applicability of Doctrine of State Immunity

Article I, § 14, Alabama Constitution of 1901, provides “[t]hat the State of Alabama shall never be made a defendant in any court of law or equity.” “This Court has extended the restriction on suits against the State found in § 14 ‘to the state’s institutions of higher learning’ and has held those institutions absolutely immune from suit as agencies of the State.” Ex parte Troy Univ., 961 So.2d 105, 109 (Ala.2006). Consequently, we vacate the judgment as to the University and dismiss the University as a defendant. See Alabama Agric. & Mech. Univ. v. Jones, 895 So.2d 867, 873 (Ala.2004).
The Department is a State agency. See § 9-2-1 et seq., Ala.Code 1975. Therefore, § 14 affords it absolute immunity from suit and deprives the trial court of subject-matter jurisdiction insofar as the Department is concerned. Ex parte Alabama Dep’t of Transp., 990 So.2d 366, 368 (Ala.2008). We vacate the trial court’s judgment insofar as the Department is concerned and dismiss the Department as a defendant.
Similarly, the Authority is “a public corporation and instrumentality of the state.” § 9-14B^(a), Ala.Code 1975. Consequently, it is also entitled to the absolute immunity afforded by § 14. The trial court’s judgment is vacated as to the Authority, and we dismiss the Authority as a defendant. Although three defendants have been dismissed, the presence of the remaining defendants is sufficient to require our consideration of the merits of these appeals.

II. Factual Background

It is the duty of the Department “[t]o maintain, supervise, operate and control all state parks -” § 9-2-2(3), Ala.Code 1975. The park, one of the largest in the State-park system, is located on the coastline in Gulf Shores. For many years, the facilities at the park included the lodge, which provided accommodations for both lodging and meetings. At times, the Department itself operated the lodge; at other times, the lodge was operated by concessionaires pursuant to contracts with the Department. In 2004, the lodge was de *436 stroyed by Hurricane Ivan, and it has not been replaced.
Following Governor Riley’s election and his appointment of Lawley as the commissioner of the Department, even before the lodge was destroyed by Hurricane Ivan, the development of a new hotel and conference center on the property on which the lodge was located became a priority of Governor Riley’s and the Department. In 2005, after the lodge had been destroyed, the Department agreed to lease the property upon which the lodge once stood to the University for a term of not less than 70 years and 1 day. The University would in turn “subleas[e] the property for development and operation as a resort and conference center, and for the utilization of the property in [its] curriculum for its hotel and restaurant management programs and other educational programs.” Defendants’ brief, at 11-12. The Department and the University executed a lengthy memorandum of understanding concerning both the lease and the sublease. The memorandum of understanding provides that the primary use of the property will be as a “hotel and coastal resort” and that the University’s use of the property for educational purposes will be allowed only “so long as such activities do not materially or unreasonably interfere with the primary use.” Further, the agreement provides that guests of the proposed new facility “shall be entitled to certain rights and privileges within the ... Park.”
The University has expressed an interest in involving West Paces Hotel Group as a sublessee in developing and operating the resort. The memorandum of understanding provides that the Department and the University will jointly select the sublessee. Plans for the development of the proposed facility will have to be approved by the Department, and the memorandum of understanding gives the Department the right to inspect the property to ensure that it is being properly maintained, as well as the right to cure any maintenance deficiencies. The University’s liability for payments due the Department under the proposed lease will be limited to the proceeds available from any financing for the development and construction of the resort and any money received from the sublessee.

III. The Summary Judgment

In its summary judgment in favor of the hotel and the intervenors, the trial court held that the lease and sublease contemplated by the memorandum of understanding between the Department and the University violated three statutes: the State Parks Concession Act, § 9-14-20 et seq., Ala.Code 1975 (“the Concession Act”); the Gulf State Park Improvement Act, § 9-14B-1 et seq., Ala.Code 1975 (“the Improvement Act”); and the State Land Sales Act, § 9-15-70 et seq., Ala.Code 1975 (“the Sales Act”). The trial court also concluded that the proposed transactions violated two provisions of the Alabama Constitution of 1901, namely §§ 93 and 213.32 (Off.Recomp.) (Amend, no. 617, Ala. Const.1901). On appeal, the defendants challenge each of those holdings. We will, as the parties agree that we should, review each holding de novo.

TV. Analysis

A. The Sales Act

The defendants argue that the Sales Act does not apply to the proposed lease to the University or to the University’s proposed sublease to a developer and, therefore, that the defendants are not required to comply with the competitive-bid provision of the Sales Act. We agree.
The Sales Act “applies to all real property and interests therein owned by the *437 State of Alabama and the departments ... and agencies of the state with the exception of those sales, transfers, and reversions set out in Section 9-15-82.” (Emphasis added.) Section 9-15-82, Ala.Code 1975, provides, in pertinent part, that the Sales Act “shall not apply to the transfers of real property between departments, boards, bureaus, commissions, institutions, corporations, or agencies of the state.” Thus, a lease from the Department to the University would not be subject to any requirement of the Sales Act.
Also exempt from the requirements of the Sales Act are “[gjround leases and leases of facilities by institutions of higher education ... for institution-related purposes which are designed to enhance the operation of the institution and are declared to be in the best interest of the institution by the board of trustees.” § 9-15-82. It is undisputed that the University’s proposed involvement in the development of a resort at the park would be for educational purposes, including the enhancement of its hotel-and-restaurant-management program. Further, it is undisputed that the University’s board of trustees, by a duly approved resolution, authorized the University’s president to proceed with the transactions contemplated in the memorandum of understanding.
Because the Sales Act is not applicable to the proposed transactions, the trial court erred in holding that the defendants are required to comply with the competitive-bid requirements in the Sales Act. Therefore, as to the holding that the plan proposed by the memorandum of understanding violated the Sales Act, the trial court’s judgment is reversed.

B. The Improvement Act

In holding that the proposed development violated the Improvement Act, the trial court stated that the “[djefendants may not engage in the planning and construction of any hotel and convention center at Gulf State Park that fails to effectively and meaningfully consider the per capita income and average family income of Alabamians in its design and costs in accordance with Ala.Code § 9-14B-7.” The defendants argue that § 9-14B-7 does not apply to any of them. We agree.
The Joint Legislative Committee on State Parks (“the committee”) was created by § 9-14A-21(a), Ala.Code 1975. The committee is not a defendant in either of these consolidated declaratory-judgment actions.
Assuming, without deciding, that the Improvement Act is otherwise applicable to the proposed lease and sublease, it is clear that § 9-14B-7(a) imposes no duty upon any defendant. Instead, it provides only that the committee, under certain circumstances, “shall take into consideration the per capita income and average family income of Alabamians in planning and approving the design and costs of lodging facilities in Gulf State Park .... ” Consequently, the trial court erred in extending an expanded version of that duty to the defendants, and, to the extent that it did so, its judgment is reversed.

C. Section 93, Alabama Constitution of 1901

Section 93, Alabama Constitution of 1901, provides, in pertinent part:
“The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the *438 Constitution of Alabama or amendments thereto.”
In its judgment, the trial court stated that, “[i]n planning, constructing, operating and maintaining any hotel ... and conference facility on property at Gulf State Park, Defendants must not create a state interest in private enterprise in violation of [§ 93] by engaging in works of internal improvement or the lending of money or credit for works of internal improvement without specific constitutional authority.” The defendants argue that “[t]he record does not support a violation or application of § 93 of the Alabama Constitution.” Defendants’ brief, at 38. We agree.
The development contemplated by the memorandum of understanding will not be financed, in whole or in part, by bonds issued by any State entity. Under the memorandum of understanding, the sublessee, not the Department or the University, “will contract for the construction, maintenance and operation of the [h]otel and other improvements related thereto.” Consequently, there is no substantial evidence supporting the trial court’s conclusion that the defendants plan to “create a state interest in private enterprise ... by engaging in works of internal improvement or the lending of money or credit for works of internal improvement without specific constitutional authority.” Further, neither a lease nor a sublease to which the State is a party, standing alone, unlawfully engages the State in a private business. See Corning v. Patton, 236 Ala. 354, 357, 182 So. 39, 41 (1938)(“We fail to see how the operation of the lease will incur any pecuniary liability on the county or that it engages the county in a private business. It is a straight out ground lease for a fixed rental to be absorbed in part by valuable improvements which are to revert to the county upon the expiration of the lease. The fact that the rental is to be enhanced by a commission based upon the volume of business of the lessee does not make the county a party engaging in a business entailing upon it a profit and loss.”). Thus, the trial court, to the extent that it concluded that the proposed transactions violate § 93, erred, and, to that extent, its judgment is reversed.

D. Section 213.32, Alabama Constitution of 1901 (Ojf.Recomp.)

In its judgment, the trial court stated that “[a]ny facility planned and constructed upon property at Gulf State Park must be operated and maintained exclusively by employees of the Department ... in compliance with [§ 213.32] of the Alabama Constitution.” In challenging this portion of the judgment, the defendants argue, in pertinent part, that § 213.32 does not apply to the contemplated project, “because the bond proceeds authorized by [§ 213.32] will not be used to finance the project.” Defendants’ brief, at 28. We agree.
Section 213.32 provides, in pertinent part:
“The State of Alabama is authorized to become indebted for the purpose of the acquisition, provision, construction, improvement, renovation, equipping, and maintenance of the state parks system, public historical sites, and public historical parks, and in evidence of the indebtedness so incurred to sell and issue bonds, in addition to all other bonds of the state, not exceeding one hundred ten million dollars ($110,000,000) in aggregate principal amount.... One hundred four million dollars ($104,000,000) of the bonds shall be issued for the state by the Alabama State Parks System Improvement Corporation pursuant to the appropriate resolutions adopted by the board of directors of the corporation and the proceeds thereof shall be appropriat *439 ed and used exclusively for the purpose of paying the expenses incurred in the sale and issuance of the bonds and for payment of the costs of the acquisition, provision, construction, improvement, renovation, equipping, and maintenance of the state parks system .... Such acquisition, provision, construction, improvement, renovation, equipping and maintenance of the state parks system, shall be completed at the direction of the Alabama State Parks System Improvement Corporation with the advice and concurrence of the Joint Legislative Committee on State Parks, and all state park system land and facilities, except for existing concession operations or other existing permitted operations, shall thereafter be exclusively and solely operated and maintained by the Department .... ”
It is clear that any obligation imposed by this section is limited to “[s]uch acquisition, provision, construction, improvement, renovation, equipping [or] maintenance of the state parks system [as may] be complied at the direction of the Alabama State Parks System Improvement Corporation with the advice and concurrence of the Joint Legislative Committee on State Parks,” using the proceeds of the bonds authorized by § 213.32. (Emphasis added.) The project contemplated by the memorandum of understanding between the Department and the University will not involve the use of the proceeds of any bonds issued by a State entity. Further, neither the Alabama State Parks System Improvement Corporation (“the corporation”) nor the committee will be involved in the project.
We have not ignored the hotel’s argument that an earlier use of the bond proceeds authorized by § 213.32 “in furtherance of the planned development at the ... Park,” hotel’s brief, at 9, should subject the project contemplated by the memorandum of understanding to the requirements of that section. However, the hotel does not explain how the use of such proceeds triggered any obligations under the section. Further, there is uncontroverted evidence that all bond proceeds arguably associated with the property upon which the lodge once stood have been refunded to the corporation.
For these reasons, the trial court erred in imposing upon the defendants what it construed to be a requirement of § 213.32. Consequently, to the extent that the trial court did so, its judgment is reversed.

E. The Concession Act

The Concession Act authorizes the Department to “enter into contracts with persons, firms or corporations to maintain and operate concessions within the state park areas for the welfare of the general public in the use and enjoyment of the state park system.” § 9-14-20. However, the Department’s authority to enter into contracts is not unlimited. Instead, the Concession Act prescribes a competitive-bid procedure. See §§ 9-14-21 to -25, Ala.Code 1975. Further, § 9-14-24(b) provides, in pertinent part, that “[a]ll concession contracts of whatever nature or form shall provide for the reasonableness of the concessionaire’s rates and charges to the public .... ” Finally, § 9-14-27 limits the length of the term of a concession contract:
“No concession contract shall be granted, the term of which exceeds six years, unless the concessionaire is required by the terms of the contract to expend major monetary sums for the purpose of improving, furnishing, equipping or enlarging existing facilities or constructing and/or furnishing additional facilities on the concession premises. In the event such major expenditures are *440 made by a concessionaire, the term of his concession contract may be extended, but in no event exceed 12 years.”
The trial court held that the transactions contemplated by the memorandum of understanding between the Department and the University would violate these statutory requirements. We agree.
The defendants do not argue that a contract for the construction and operation of a lodging-and-meeting facility within a State park is not a concession contract. Also, they do not contend that the proposed transactions would comply with the requirements of the Concession Act. Instead, they argue that the proposed lease and sublease are not subject to the Concession Act. The defendants offer several reasons in support of this argument, all of which are without merit.
The Concession Act prescribes the requirements for contracts regarding “concessions within the state park areas for the welfare of the general public in the use and enjoyment of the state park system.” § 9-14-20 (emphasis added). The defendants point out that the commissioner has the authority to lease a portion of the park. See § 9-2-3, Ala.Code 1975. See also Cotton Bayou Ass’n v. Department of Conservation, 622 So.2d 924 (Ala.1993). They then argue, citing no authority, that the proposed lease of a portion of the park would remove the leased portion from the park and the State-park system, thereby taking “the proposed lease ... outside the scope of the Concession Act.” Defendants’ brief, at 25. However, as the AEA argues, “leasing the land at issue would not magically remove the land from the state park.” AEA’s brief, at 13. Indeed, the Concession Act itself specifically contemplates that a concession contract may be in the form of a lease. See, e.g., § 9-14-21(e) (“All concessionaires shall be fully responsible for the maintenance and upkeep of the state facility leased.” (emphasis added)).
Section 9-2-3, Ala.Code 1975, in pertinent part, gives the Department “full power and authority to ... lease lands under its jurisdiction when in its judgment it is advantageous to the state to do so in the orderly development and management of state parks and parkways.” This general language in no way compels the conclusion that a lease of State-park property for use as a “hotel and coastal resort,” a use complementary to the recreational purpose of the park, would somehow cause the leased property to cease to be a part of the park.
Cotton Bayou provides no support for the defendants’ argument. That ease “present[ed] the single issue of whether a State of Alabama agency has the authority to negotiate for the lease of real property or must lease real property pursuant to the competitive bid law, Ala.Code 1975, § 41-16-1 et. seq.” 622 So.2d at 924-25. This Court simply held in Cotton Bayou that the competitive-bid law did not apply and that, therefore, the Department could lease the real estate in question by a negotiated lease. There is no indication in Cotton Bayou that the lease at issue there involved a concession within a State-park area.
As previously discussed, the proposed lease and sublease are not subject to the competitive-bid requirements of the Sales Act because the Sales Act exempts transfers between State agencies and leases by institutions of higher education for institution-related purposes. The defendants argue, as a matter of statutory construction, that the Concession Act cannot be construed to apply to the proposed project. They state, without citing authority, that, in light of the Sales Act, it is “an implausible construction of [the Concession Act] to apply its restrictions to an institution of higher education administering one of its *441 programs.” Defendants’ brief, at 26. They support this conclusion with a preceding paragraph:
“Moreover, the application of the Concession Act to the [memorandum of understanding] leases would provide the kind of restrictions on the lease which are specifically exempted by the ... Sales Act. The ... leases are exempted from competitive auction and sealed bids by Ala.Code [1975,] § 9-15-82[,] because of its educational purpose. To require compliance with the Concession Act would render the ... Sales Act, and its application to the ... leases, irrelevant. The ... Sales Act has its own bidding requirements, and educational purpose ground leases are plainly exempted.”
Defendants’ brief, at 25-26.
As previously noted, the Sales Act exempts the transfer from the Department to the University from competitive bidding. The Concession Act is phrased in terms that contemplate regulation of transactions between the Department and the private sector. This Court set forth rules of statutory construction germane to the issue here presented in Weill v. State ex rel. Gaillard, 250 Ala. 328, 334, 34 So.2d 132, 137 (1948):
“A statute often speaks as plainly by inference as in any other manner, and it is a general rule that that which is clearly implied from the express terms of a statute is as much a part thereof, and is as effectual as that which is expressed. This rule applies to provisos, and under it an act which, although neither expressly forbidden nor authorized, is contrary to the plain implication of a statute, is unlawful.

“Another rule which we think has application here is that construction should be avoided which affords an opportunity to evade the act, and one favored which would defeat subterfuges, expediencies or evasions employed to continue the mischief sought to be remedied by the statute, or to defeat compliance with the terms, or' any attempt to accomplish by indirection what the statute forbids.”

(Emphasis added.) The transaction proposed by the memorandum of understanding is an attempt to circumvent legislative intent by having the Department carry out through an intermediary acts prohibited by the legislature in the Concession Act. Although the Concession Act does not expressly prohibit the Department from contracting with another State agency to accomplish what it could not do if it acted without an intermediary, such conduct constitutes activity “which, although neither expressly forbidden nor authorized, is contrary to the plain implication of [the] statute.” Likewise, such activity is “[an] attempt to accomplish by indirection what the statute forbids.” Based on the rules expressed in Weill v. State ex rel. Gaillard, we reject the defendants’ contention that it is implausible to construe the Concession Act so as to apply it to the transaction between the University and the sub-lessee.
Finally, the defendants argue that the Sales Act, enacted in 1995, repealed by implication the aforementioned requirements of the Concession Act, enacted in 1971. Citing only Kimbrell v. State, 272 Ala. 419, 425, 132 So.2d 132, 137 (1961), for the general proposition of law that “the particular will govern the general,” the defendants argue:
“[T]he specificity of the 1995 statute ... implies that the more general 1971 statute is not meant to control. Section 9-15-82 is part of a 1995 statute specifically addressing educational-purpose ground leases. There is nothing specific in the 1971 Concessions Act about educational-purpose leases related to park *442 land. Therefore, the 1971 act does not apply to educational-purpose ground leases as it is repealed impliedly.”
Defendants’ brief, at 26. The AEA responds that “there is no basis on which to find an implied repeal, as is evidenced by a straightforward application of the law of implied repeals.” AEA’s brief, at 17. We agree with the AEA.
It is well established that repeal by implication is not favored. See, e.g., Willis v. Kincaid, 983 So.2d 1100, 1106 (Ala.2007). More specifically, this Court has recognized “[t]he rule that implied repeal is disfavored when the earlier act is specific and the subsequent act is general.” Marks v. Tenbrunsel, 910 So.2d 1255, 1262 (Ala.2005).
The application of the Concession Act is specifically limited to the Department’s “contracts with persons, firms or corporations to maintain and operate concessions within the state park areas .... ” § 9-14-20, Ala.Code 1975. On the other hand, the Sales Act “applies to all real property and interests therein owned by the State of Alabama and the departments, boards, bureaus, commissions, institutions, corporations, and agencies of the state with the exception of [certain] sales, transfers, and reversions set out in Section 9-15-82.” § 9-15-70, Ala.Code 1975. The defendants argue that the Sales Act is, by reason of its exemption of leases by institutions of higher education for institution-related purposes, the more specific of the two acts. However, looking at the subject matters of the two acts, it is clear that the Sales Act is the more general act, because an act relating to a broad range of lease or sales transactions made by any State entity is far more general than the Concession Act, which covers only concession contracts entered into by the Department involving State-park land. The defendants cite no authority for the proposition that the subject matter of an act is determined by its exceptions and not by the general scope of the act. Further, it would be illogical to conclude that the legislature, by granting the University authority to enter into certain leases, intended to remove the limitations on the Department’s authority to enter into concession contracts. Indeed, such a conclusion would allow the Department, by first leasing the property to the University, to do indirectly what it may not do directly, namely, to enter into a contract for the operation of a concession within the park without first complying with the Concession Act. “[The Department] may not do indirectly what the Legislature prohibits [it] from doing directly.” Richardson v. Stanford Props., LLC, 897 So.2d 1052, 1059 (Ala.2004).
The defendants have not demonstrated any error in the trial court’s holding that the proposed transactions would violate the Concession Act. Therefore, to the extent of that holding, the trial court’s judgment is affirmed.

V. Conclusion

In summary, we dismiss the University, the Department, and the Authority as defendants, and, insofar as they are concerned, we vacate the trial court’s judgment. We reverse the trial court’s judgment insofar as it held that the Sales Act, the Improvement Act, § 93, Ala. Const.1901, and § 213.32, Ala. Const. 1901 (Off.Recomp.), have been, or would be, violated by the past or proposed actions of the defendants. Finally, we affirm the trial court’s judgment insofar as the trial court held that the Concession Act has been, or would be, violated by the past or proposed actions of the defendants.
1071551 — STATE DEFENDANTS DISMISSED AND JUDGMENT VACAT *443 ED IN PART; AFFIRMED IN PART; AND REVERSED IN PART.
1071552 — STATE DEFENDANTS DISMISSED AND JUDGMENT VACATED IN PART; AFFIRMED IN PART; AND REVERSED IN PART.
COBB, C.J., and STUART, SMITH, BOLIN, PARKER, and MURDOCK, JJ., concur.
LYONS and SHAW, JJ., concur in part and concur in the result.